MICHAEL J. HAYES *vs.* ANDREA DI VITO & wife.

Suffolk.  Jan. 18. — Feb. 26, 1886.  DEVENS & GARDNER, JJ., absent.

In an action of tort for breaking and entering the plaintiff's close, it appeared that the defendant acted under a claim that he had a right of way over said close as appurtenant to two parcels of land, whereas, in fact, he had the right as appurtenant to one parcel only. *Held*, that it was rightly ruled that the defendant was not a trespasser.

TORT for breaking and entering the plaintiff's close on North Street, in Boston, and breaking down and destroying the fences and gates thereon.  Writ dated October 24, 1884.  At the trial in the Superior Court, without a jury, before *Knowlton*, J., the following facts appeared :

The plaintiff at the time of the injury complained of was the owner of the estate No. 292 North Street, and the defendants were the joint owners of lot No. 290, which includes the lots marked B and A² on a plan used at the trial.  Lot 294 is owned by a third person.

The defendants admitted that they broke down the gates on each side of the plaintiff's lot, but introduced evidence to justify

their acts on the ground that they had a right of way over the plaintiff's lot and over lot No. 294 to Fleet Street. A copy of the plan is printed in the margin.*

In 1797, the estate of Anderson Phillips, which included all of lots 290 and 292 on the plan, and part of lot 294, was divided among his heirs, by commissioners appointed by the Probate Court, on a petition for partition. Lot 290 was set off to Anna Hayter and Dorcas Florence, and lot 292 was set off to Mary Phillips and Sarah James. The partition recognized the existence of a right of way for the benefit of each of these estates to Fleet Street.

Subsequently, in 1797, lot 290 was divided between Hayter and Florence, in such a manner that lots A$^1$ and A$^2$ became the property of Florence, and lot B the property of Hayter.

On August 4, 1859, Adeline L. Cass became the owner of lot 292. She held the estate unincumbered until July 25, 1860,

when she mortgaged it, which mortgage was afterwards discharged. In 1876 she again mortgaged it, and the plaintiff derived his title through a foreclosure of this mortgage.

On August 1, 1859, the said Cass became the owner of lot B. She held it unincumbered until December 27, 1865. She also, in 1859, became the owner of an undivided half of lots A[1] and A[2]. The other half of lots A[1] and A[2] was conveyed on June 7, 1860, by one Nicholson, to the city of Boston, by a deed with full covenants of warranty, in which deed his wife joined to release dower and homestead. In fact, Nicholson only owned seven eighths of this half, the other eighth belonging to his wife. On June 28, 1860, the city of Boston conveyed this half to said Cass, by a deed containing covenants against all incumbrances " made or suffered by it," and of warranty " against the lawful claims and demands of all persons claiming by, through, or under it, but against none other." In 1861, Nicholson and his wife in her right conveyed one eighth of said one half to the city of Boston, by a deed containing full covenants of warranty.

The defendants derived their title to lot 290 through the foreclosure of a mortgage given by said Cass in 1867.

Cass owned the equity of redemption in lot 292 until 1877, and the equity in lot 290 until 1876.

In 1860, the city of Boston took by purchase, for the purpose of widening North Street, the whole of lot A[1] and a portion of lot B.

There was evidence that, by reason of the change or reconstruction of the buildings upon lot B, the defendants could not remove the contents of a vault in lot A[2] through or over lot B to North Street, without going up or down sundry flights of stairs; and they claimed the right to go over lot 292 to Fleet Street for that purpose.

The defendants testified that, when they broke down the gates on lot 292, they claimed the right, and did it in the exercise of the right generally, to have the passageway remain as it had been, and also to have it so for the removal of ashes, swill, waste, &c., from the house on lot B to Fleet Street.

The judge ruled, as matter of law, that no right of way for the benefit of lot 290, or any part of it, over lot 292, to and from Fleet Street, could have been created by prescription, after the

two lots 290 and 292 came into the ownership and possession of Mrs. Cass, in 1859, as above recited; that the title to lot 292 and lot B was so merged in Mrs. Cass from August 4, 1859, to July 25, 1860, that the way between Fleet Street and lot B over lot 292 was thereby extinguished; and that the burden of proof was upon the defendants to show the existence of a passageway which they had a right to use; and to these rulings no exceptions were taken.

The judge also ruled that the right from lot $A^2$ over lot 292 to Fleet Street was not extinguished by the merger, but still existed (because of the failure of Mrs. Cass to get a full and absolute title to lot $A^2$); and also found as a fact, that if the passageway across lot 292 as it existed on August 4, 1859, did not touch lot $A^2$, the owners of lot $A^2$ had a right to pass to it across lot B, and ruled that this right was not lost by merger, and so found that the defendants had a right of way by prescription across the plaintiff's land for the benefit of lot $A^2$, either by passing directly into the way from lot $A^2$, or by passing into it across lot B, according as the passageway did or did not touch lot $A^2$. To these rulings the plaintiff excepted.

The judge also ruled that, as the defendants had the right to go from lot $A^2$ over lot 292 to Fleet Street for the uses of lot $A^2$, but had not the right to go from lot B over lot 292 directly, or from lot B over lot $A^2$ and then over lot 292 for the uses of lot B, still if the defendants broke down the gates in the exercise of their right to have the passageway remain as it had been, it would not make them liable in this action that they also claimed the right to have it open for the benefit of lot B, and broke them down with a view subsequently to using the passageway to carry out ashes from lot B, as well as other articles from lot $A^2$. To this ruling the plaintiff excepted.

The judge also found, that a right of way from Fleet Street over lot 292, for the benefit of the separate parts of lot 290, had been acquired by prescription at the time lot 292 and lot B became the property of Mrs. Cass, in 1859.

The judge found for the defendants; and the plaintiff alleged exceptions.

*J. O. Teele*, for the plaintiff. So far as lot 292 and lot B are concerned, there was a unity and merger of title in Cass, on

August 4, 1859, which extinguished the easement in favor of lot B, if any such existed, regardless of any question relating to lot A². *Atwater* v. *Bodfish*, 11 Gray, 150. The easement appurtenant to lot A², if any, is to be treated as if that lot had been purchased and held by a third person. If we admit that the way is still appurtenant to lot A², because Cass failed to get a full title to that lot, still the defendants are liable for the alleged trespass, and it is not necessary in this case to discuss the question whether the easement appurtenant to lot A² was extinguished by merger or not. Nor is it necessary to determine whether the way appurtenant to lot A², prior to 1859 and while lot B and lot A² were separately owned, was immediately connected with lot A², or passed over a corner of lot B to reach lot 292.

No right of way created or existing after 1859 was proved by the defendants, but upon the ruling that the way was extinguished as to lot B, but still existed as to lot A², the defendants contended that they broke down the gates in the exercise of the right generally to have the way remain as it had been, and to use it for the purpose of lot B ; and the judge ruled that, having the right to use the way for the benefit of lot A², they were not liable as trespassers, although they broke down the gates for the purpose of using the way for the benefit of lot B, as well as of lot A². This ruling was wrong. If the defendants entered upon the way and broke down the gates for two purposes, one justifiable and the other not, the justification fails, as it is not a case for an apportionment. *Davenport* v. *Lamson*, 21 Pick. 72. *Cotton* v. *Pocasset Manuf. Co.* 13 Met. 429, 433. *Ganley* v. *Looney*, 14 Allen, 40.

*C. P. Greenough*, (*J. P. Parmenter* with him,) for the defendants.

W. ALLEN, J. The defendants had a right of way over the locus as appurtenant to lot A²; the plaintiff had no right to obstruct the passageway with gates ; and the defendants lawfully broke down the gates in the exercise of their right to remove the obstructions.

The fact that the defendants also claimed a right in the passageway as appurtenant to lot B did not give the plaintiff a right to obstruct it, and did not impair the right of the defendants to remove the obstruction. They did only what they had a

right to do, and made no wrongful use of the way, as was done in *Davenport* v. *Lamson*, 21 Pick. 72. The fact that they intended to make an unjustifiable use of the way at some future time could not make them trespassers.

*Exceptions overruled.*